UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DECONDI MAYO,<br><br>Defendant. | Criminal No. 21-230 (PLF) |

MEMORANDUM OPINION AND ORDER

Pending before the Court is defendant Decondi Mayo's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody ("Mot.") [Dkt. No. 51]. In 2022, Mr. Mayo pleaded guilty to one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). See Plea Agreement [Dkt. No. 33]. In his present motion, Mr. Mayo argues that the Court must vacate his conviction and sentence because he received ineffective assistance of counsel in deciding whether to enter a guilty plea. See Mot. at 2. After careful consideration of the parties' papers, the relevant legal authorities, and the record, the Court will deny Mr. Mayo's motion.

## I. FACTUAL AND PROCEDURAL HISTORY

Officers with the Metropolitan Police Department ("MPD") arrested Mr. Mayo on January 29, 2021. See Gov't Ex. A. [Dkt. No. 54-1]. The lead-up to Mr. Mayo's arrest was

described in a Gerstein affidavit drafted that same day by MPD Officer Ryan Sullivan. See id.[1] According to the affidavit, on January 29, 2021, at around 3:00 p.m., a group of uniformed officers in marked police vehicles was patrolling an area that had recently seen an uptick in gun violence. See id. During their patrol, officers observed Mr. Mayo reaching into the passenger-side window of a blue vehicle with Maryland tags. See id. Upon seeing the officers, Mr. Mayo separated from the vehicle and began walking toward an unoccupied home while looking back over his shoulder at the officers. See id. Officers parked and exited their patrol cars and observed Mr. Mayo "continually pressing his right arm against the right side of his jacket as if he was securing an object on the front of his person." Id. By contrast, his "left arm continued to move freely." Id. Based on their observations and experience, the officers believed that Mr. Mayo had a firearm. See id.

Officer Sullivan moved toward Mr. Mayo "in [an] effort to stop him." Gov't Ex. A. As he did so, the officer observed Mr. Mayo's "right shoulder and elbow move in an upwards rolling motion as if [Mr.] Mayo was withdrawing something from the front of his waistband area." Id. "Almost simultaneously, Officer Sullivan observed a black in color object that he immediately recognized to be a pistol, discard from [Mr.] Mayo's person." Id. Three officers on the scene "heard a noise consistent with a metal object striking concrete" coming from Mr. Mayo's direction. Id. An officer "then located a black in color firearm next to [Mr.] Mayo's feet." Id. Mr. Mayo was placed under arrest. Id.

On March 18, 2021, Mr. Mayo was charged by indictment with one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime

---

[1] A Gerstein affidavit is a "document written to support probable cause after the arrest." Wiggins v. District of Columbia, Civil Action No. 1:25-3399 (TNM), 2026 WL 1146055, at *6 (D.D.C. Apr. 28, 2026); see Gerstein v. Pugh, 420 U.S. 103 (1975).

Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). See Indictment [Dkt. No. 1]. On September 6, 2022, Mr. Mayo pleaded guilty to the indictment's sole count. See Plea Agreement; Statement of Offense [Dkt. No. 34]. On April 24, 2023, Mr. Mayo was sentenced to eighty-four months of incarceration, followed by thirty-six months of supervised release. See Minute Entry dated Apr. 24, 2023. A few months later, Mr. Mayo filed two pro se letters, each alleging that his trial counsel had rendered ineffective assistance. See Letter dated June 14, 2023 [Dkt. No. 47]; Letter dated July 14, 2023 [Dkt. No. 46]. On May 15, 2024, Mr. Mayo, through new counsel, filed the instant motion pursuant to 28 U.S.C. § 2255. See Mot. The government filed its opposition on August 19, 2024. See United States' Opposition to Defendant's Motion to Vacate, Set Aside, or Correct Sentence ("Opp.") [Dkt. No. 54]. Mr. Mayo has not filed a reply. His motion is now ripe for decision.

## II. LEGAL STANDARD

An individual sentenced in federal court may move to vacate, set aside, or correct a sentence if he believes that the sentence was imposed, among other things, "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). The movant "bears the burden of establishing a denial of constitutional rights by a preponderance of the evidence." United States v. Clark, 382 F. Supp. 3d 1, 27 (D.D.C. 2019) (citing Daniels v. United States, 532 U.S. 374, 381-82 (2001)). If the Court determines that a sentence has been imposed unlawfully, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." United States v. Cross, 256 F. Supp. 3d 46, 47 (D.D.C. 2017) (quoting 28 U.S.C. § 2255(b)); see also United States v. Palmer, 854 F.3d 39, 49 (D.C. Cir. 2017).

## III. DISCUSSION

Mr. Mayo contends that his counsel rendered ineffective assistance by failing to file a suppression motion before Mr. Mayo entered a guilty plea. See Mot. at 3-4. Mr. Mayo also argues that counsel failed to discuss with him the possibility of a suppression motion and its implications for a plea agreement. See id. The government argues that even if counsel had filed a motion to suppress, it would have been denied, and counsel cannot be found ineffective for not filing a meritless motion. See Opp. at 2.[2]

To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate that (1) "counsel's performance was deficient," and (2) counsel's deficient performance "prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). "Surmounting Strickland's high bar is never an easy task . . . ." United States v. Brinson-Scott, 714 F.3d 616, 623 (D.C. Cir. 2014) (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). Failure to make the required showing of either deficient performance or prejudice defeats an ineffectiveness claim. See Strickland v. Washington, 466 U.S. at 700.

To establish deficient performance, a defendant must show that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. at 687. A defendant can prevail only if, in light of all circumstances at the time of the conduct, "counsel's representation fell below an objective standard of reasonableness," as measured by "prevailing

---

[2] The government also suggests that Mr. Mayo's motion may be untimely because, although it was filed one calendar year after Mr. Mayo's judgment became final for purposes of 28 U.S.C. § 2255(f), it was filed more than 365 days after that date due to the leap-year addition of an extra day in February 2024. See Mot. at 4-5 n.2. Because the Court agrees with the government that Mr. Mayo's ineffective-assistance argument fails on its merits, the Court will not reach the government's alternative argument.

professional norms." Id. at 688; see also United States v. McDade, 699 F.3d 499, 506 (D.C. Cir. 2012). "Judicial scrutiny of counsel's performance must be highly deferential." Strickland v. Washington, 466 U.S. at 689. To establish prejudice, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Udo, 795 F.3d 24, 30 (D.C. Cir. 2015) (quoting Strickland v. Washington, 466 U.S. at 694). "In the context of guilty pleas, . . . the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Establishing a "reasonable probability" requires that "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 104, 112 (2011).

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); see United States v. Miller, 953 F.3d 804, 809 (D.C. Cir. 2020). In such a case, "the relevant question under Strickland" is whether "no competent attorney would think a motion to suppress would have failed." Premo v. Moore, 562 U.S. 115, 124 (2011).

Mr. Mayo's central assertion is that "a meritorious motion to suppress could have been filed" and that trial counsel "failed to discuss . . . the evidence surrounding the facts to support that motion, failed to explain the law surrounding the motion, and failed to advise Mr. Mayo that a plea following the motion, whether the motion w[as] successful or not, could have been negotiated." Mot. at 3. Mr. Mayo insists that had such a discussion taken place, he

"would have rejected the government's plea offer and insisted on the litigation of a motions hearing and a trial." Id. at 4. Mr. Mayo's motion, however, "offers no factual basis for his claim that a motion to suppress would have been granted." Opp. at 7. Instead, he asserts generally that he was "confronted by police without any cause" and that his movements were unlawfully impeded. Mot. at 4-5. Such conclusory assertions, standing alone, do not establish a Fourth Amendment violation and therefore cannot support an actionable ineffective assistance claim. See, e.g., United States v. Bowman, Criminal No. 11-00129 (CKK), 2018 WL 6308778, at *6 (D.D.C. Dec. 3, 2018) (concluding that the defendant's ineffective-assistance claims "are not actionable because they are unsupported by any facts" and "summarily deny[ing] these claims as vague and conclusory").

More importantly, the record shows that a suppression motion would not have succeeded. It is established that "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)); see District of Columbia v. R.W., 608 U.S. 22, 26 (2026) ("[R]easonable suspicion arises when, based on the totality of the circumstances, the detaining officer had a particularized and objective basis for suspecting criminal wrongdoing." (citation modified)). In the Gerstein affidavit, also incorporated into the plea agreement's statement of offense, Officer Sullivan attested that he and other officers—dressed in uniform and driving marked police vehicles—were patrolling an area that had experienced a recent uptick in gun violence. See Gov't Ex. A. The officers observed Mr. Mayo reach into a vehicle and then depart once he noticed the officers, looking back over his shoulder as he walked to what appeared to be an unoccupied home. See id. According to the affidavit, officers observed Mr. Mayo "continually

pressing his right arm against the right side of his jacket as if he was securing an object on the front of his person. [Mr.] Mayo's left arm continued to move freely as he proceeded up the concrete steps and towards the front door of" the home. Id.

These observations support the conclusion that officers had sufficient suspicion to stop Mr. Mayo. Officers observed Mr. Mayo in an area experiencing increased gun violence, reaching into the window of a parked vehicle, abruptly walking away upon noticing police presence, and repeatedly adjusting or securing an object in his waistband area. Though any one of those observations might be innocent in isolation, officers were entitled to consider the totality of the circumstances in assessing whether a brief investigatory stop was warranted. See District of Columbia v. R.W., 608 U.S. at 26-27; see also, e.g., United States v. Taylor, 743 F. Supp. 3d 168, 175 (D.D.C. 2024) (holding that suspect's "unprovoked flight from uniformed officers in a high-crime area [was] sufficient to find that the officers' investigative Terry stop was lawful under the Fourth Amendment"); United States v. Lovelace, 357 F. Supp. 2d 39, 44 (D.D.C. 2004) (concluding that observing the defendant "make reaching motions towards his waistband . . . supported a reasonable suspicion that [the defendant] was secreting a weapon").

In addition, according to the affidavit, Officer Sullivan moved toward Mr. Mayo after observing the above-described conduct that aroused suspicion. See Gov't Ex. A. Officer Sullivan then observed Mr. Mayo make a motion consistent with removing an object from his waistband and "[a]lmost simultaneously" observed what he immediately recognized as a firearm discarded from Mr. Mayo's person. Id. Nothing in the affidavit suggests that officers had restrained Mr. Mayo or otherwise completed an investigatory stop before the firearm was discarded. The affidavit thus substantially undermines the notion that a motion to suppress would have succeeded because it supports that officers had probable cause before seizing

Mr. Mayo. See United States v. Cardoza, 713 F.3d 656, 659 (D.C. Cir. 2013) ("The Supreme Court has described the task of evaluating probable cause as a practical, common-sense decision whether, given all the circumstances set forth in the affidavit there is a fair probability that contraband or evidence of a crime will be found in a particular place." (citation modified)); see also, e.g., United States v. Moore, 75 F. Supp. 3d 444, 449 (D.D.C. 2014) (finding probable cause where an officer in pursuit of a fleeing defendant observed a gun fall from the defendant's waistband); United States v. Tuten, 293 F. Supp. 2d 30, 32 (D.D.C. 2003) ("[O]fficers had reasonable suspicion for an investigatory stop and even probable cause for arrest after viewing the gun in plain view."). At a minimum, the observations in the affidavit give competent counsel strong grounds to conclude that a suppression motion was unlikely to prevail. See Premo v. Moore, 562 U.S. at 124.

In short, Mr. Mayo has not established that a suppression motion would have succeeded. See Kimmelman v. Morrison, 477 U.S. at 375; see also United States v. Moore, 75 F. Supp. 3d at 449 ("This probable-cause conclusion sinks [Mr. Mayo's] motion to suppress."). Because the underlying Fourth Amendment claim lacks merit, counsel was not ineffective for declining to pursue it. Nor has Mr. Mayo shown a reasonable probability that, absent counsel's alleged errors, he would have rejected his guilty plea. The Court therefore concludes that he has failed to satisfy either prong of Strickland, and his motion under 28 U.S.C. § 2255 must be denied.[3]

[3] The Court concludes that an evidentiary hearing is not required to resolve Mr. Mayo's Section 2255 motion. A district court is not required to hold an evidentiary hearing on a motion under 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Here, as explained, the parties' briefs and the case record establish conclusively that Mr. Mayo is not entitled to relief.

For the foregoing reasons, it is hereby

ORDERED that Mr. Mayo's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Dkt. No. 51] is DENIED.

SO ORDERED.

Paul L. Friedman

PAUL L. FRIEDMAN
United States District Judge

DATE: 11/20/26